**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| CONSTANCE  OHRN and MARK OHRN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:12-cv-00620-TWP-DML |
| JDPHD INVESTMENT GROUP, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON SUMMARY JUDGMENT**

This matter is before the Court on Defendant JDPHD Investment Group, LLC's ("JDPHD") Motion for Summary Judgment (Dkt. 50).  Plaintiffs, Constance Ohrn and Mark Ohrn ("the Ohrns"), filed a Complaint for damages following the tragic death of their daughter, Renee Ohrn ("Miss Ohrn"), in an apartment fire in Bloomington, Indiana.  The Ohrns filed this wrongful death action, alleging that JDPHD was negligent and caused their daughter's death.  In addition to the merits of the summary judgment motion, the parties have raised objections to the use of certain expert witnesses.  Resolution of the motion will thus require a ruling on these evidentiary matters, as well as the merits.  Ultimately, the Court finds that there are certain disputed issues of material fact that preclude summary judgment on some claims, as will be explained below.  Therefore, JDPHD's Motion for Summary Judgment (Dkt. 50) is **GRANTED in part** and **DENIED in part**.

## I.  BACKGROUND

**A.     Compliance with Local Rules**

Local Rule 56-1 governs summary judgment procedure and the parties' obligations in this district.  Local Rule 56-1(b) requires non-moving parties to include a section labeled "Statement

of Material Facts in Dispute" that "identifies the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment. Furthermore, Local Rule 56-1(f)(1)(A) states that "the court will assume that: the facts as claimed and supported by admissible evidence by the movant are admitted without controversy except to the extent that: the non-movant specifically controverts the facts in that party's 'Statement of Material Facts in Dispute' with admissible evidence."  The Ohrns' response to summary judgment includes the required "Statement of Material Facts in Dispute," but it largely fails to identify factual disputes or controvert specific facts put forth by JDPHD.  The Ohrns' Statement is better described as a narrative of the events on September 30 and October 1, 2011, as opposed to identifying the factual disputes.  The Court reminds counsel to follow proper summary judgment procedure, as it is not the Court's role to scour the record to find disputed issues of fact in response to summary judgment.  However, despite plaintiffs' counsel's failure to identify and controvert specific issues of fact, there are still obvious disputes—as expanded upon in the parties' arguments—that preclude summary judgment.

**B.**     **Factual Background**

JDPHD owns the Terra Trace Apartment Complex in Bloomington, Indiana ("Terra Trace").  Terra Trace contains several separate buildings, including Building D, a three-level building with four two-bedroom apartments on each level.  It was Terra Trace's policy that prior to possession of an apartment by a new tenant, maintenance staff would perform an inspection of each apartment.  The inspection includes testing the smoke detectors within the apartments. Maintenance staff also walked through hallways every two to three weeks, and would replace batteries in common-area smoke detectors as needed.  A JDPHD employee stated that she did not

instruct new tenants about the smoke detectors while completing a tenant's move-in inspection in the apartment units.

Building D was equipped with a fire alarm system.  Each of the three levels of Building D had audible horns located in the middle of the common hallway.  Manual pull stations were located at the end of each level of Building D.  If a manual pull station was activated, or pulled, the system should sound a horn, providing audible notification of a fire.  The power switch must be in the "on" position for the fire alarm horns to sound.

Koorsen Fire & Security ("Koorsen") performed annual inspections of the fire alarms at Terra Trace.  Koorsen Fire Alarm Technician Brandon Mitchner ("Mr. Mitchner") performed the annual fire alarm inspections in 2009, 2010, and 2011, the most recent of which occurred on September 9, 2011.  On that date, Mr. Mitchner installed and tested two audible horns on the second and third levels of Building D.  Following installation, Mr. Mitchner tested the system by pulling the manual pull station and activating the horns.  Mr. Mitchner found the system to be operational.

In September 2011, Austin Orlich ("Mr. Orlich") and Jacob Lyons ("Mr. Lyons") were tenants in apartment D9 at Terra Trace.  Apartment D9 was located on the third floor of Building D in the southwest corner.  Mr. Lyons and Mr. Orlich, like all Terra Trace tenants, signed a "Tenant's and Owner's Rights and Responsibilities" agreement pursuant to a local ordinance. The agreement stated that Indiana Code required landlords to deliver rental units with functioning smoke detectors, and tenants acknowledge the same in writing.  The agreement further stated that it "is the tenant's responsibility to make sure that smoke detectors remain functional and are not disabled."  Dkt. 50-12 at 1.  It also stated that it was the tenant's responsibility to replace batteries as necessary and to inform the landlord in writing if a smoke

3

detector did not function properly.  Mr. Orlich and Mr. Lyons also signed a "Smoke Detector Compliance Form" that cited the relevant Indiana Code sections.  Mr. Orlich and Mr. Lyons disabled their smoke detector approximately one week before the fire.  Mr. Lyons stated that the smoke detector began beeping, presumably because it had a low battery, so they disabled the detector until they could replace the battery.  However, they did not replace the battery before the early morning of October 1, 2011.

On the night of September 30, and into the morning hours of October 1, 2011, Mr. Orlich hosted a party in his D9 apartment.  Miss Ohrn, a 19 year old college student attended the party with her roommate, Natalie Korpak ("Miss Korpak").  At some point after arriving at Mr. Orlich's apartment, Mr. Orlich and Miss Korpak retired to a bedroom for less than an hour.  During this time, Miss Ohrn retired to the second bedroom.  Miss Korpak joined Miss Ohrn in the second bedroom where the two chatted for approximately five minutes before falling asleep.  Party attendee Dee Faegin ("Mr. Faegin") went into the first bedroom and also fell asleep.

At some point after Miss Ohrn and Miss Korpack went to sleep, Mr. Orlich noticed a light haze in his living room.  He left the apartment to investigate, found that smoke was coming from an apartment on the second level, and pounded on doors to awaken residents.  Mr. Orlich went back to D9, where he found the living room empty, but he did not enter either of the two bedrooms.  Mr. Orlich then left the building.  At approximately the same time, Building D resident Tess Patterson ("Ms. Patterson") entered the third floor from the north stairwell.  Noticing the smoke, she attempted to trigger the fire alarm by pulling on the manual pull station located in the north stairwell.  However, the alarm did not sound.

Mr. Faegin woke up and noticed smoke in apartment D9.  He found the living area of the apartment empty and the lights were turned off.  He entered the second bedroom and woke up

4

the sleeping Miss Ohrn and Miss Korpak.  Mr. Faegin, Miss Korpak, and Miss Ohrn attempted to exit from the apartment's front door.  When Mr. Faegin opened the door, smoke poured in from the hallway.  Mr. Faegin and Miss Korpak made it to the outside balcony, where they were rescued by first responders to Building D.  Miss Ohrn did not make it onto the balcony. Bloomington Fire Department Engineer Matthew Andrews ("BFDE Andrews") responded to the fire, and discovered and rescued Miss Ohrn from apartment D9.  However, Miss Ohrn did not survive.  BFDE Andrews testified that he did not hear a fire alarm and only heard one smoke detector sounding inside Building D.

Andrea Fancher lived on the first floor of Building D in apartment D4.  She woke up and saw smoke in her bedroom.  When she exited her apartment into the common hallway, she did not hear a smoke detector or fire alarm.  Lydia Leopold lived on the second floor of Building D in apartment D7.  She was awakened by loud pounding on her door and her dog's barking, and noticed smoke in her apartment.  Her smoke detector did not sound, and she did not hear a fire alarm in the hallway as she exited the building.  Bloomington Police Lieutenant Scott Oldham responded to the scene and assisted residents in escaping the building.  He does not recall hearing a smoke detector or fire alarm.  Sergeant James Batcho-Bullerdick also responded to the scene and attempted to enter the building.  He did not hear a smoke detector or fire alarm.  Mr. Lyons came onto the scene while the fire was burning.  He approached his roommate, Mr. Orlich.  Mr. Lyons stood outside the building's south entrance and did not hear a fire alarm.

Certified Fire and Explosion Investigator Tim Clapp ("Mr. Clapp") conducted an investigation in the morning hours following the fire.  Mr. Clapp's inspection included the electrical panel located in the south stairwell of the first floor.  The electrical box was locked with a padlock, which had to be cut.  When Mr. Clapp opened the panel, he discovered that the

breakers to the fire alarm system were in the "off" position.  The inspection was witnessed by Bloomington Police Officer Sarah Carnes ("Officer Carnes").  However, JDPHD employee Dan Smith ("Mr. Smith") stated that only he and Mr. Clapp were present when the electrical box was inspected, and that when the breaker box was open, Mr. Clapp began flipping switches.

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).  "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted).  Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III. DISCUSSION

JDPHD seeks summary judgment on all of the Ohrns' claims.  As to the maintenance of Building D, JDPHD contends that the doctrine of *caveat lessee* is the presumptive rule, and the Ohrns cannot establish any exception to bar application of the rule.  As to the fire alarms, JDPHD contends it exercised reasonable care in its maintenance of the system and the Ohrns cannot establish any negligence.  As to both issues, JDPHD contends the Ohrns cannot establish a causal link as required under the negligence standard.  Finally, JDPHD alternatively seeks summary judgment for its affirmative defense:  that Mr. Orlich and Mr. Lyons were negligent *per se* or negligent as a matter of law.  The Court, for the reasons explained below, finds that there remain disputed issues of fact on the Ohrns' claims that must be resolved by a trier of fact.  The Court agrees with JDPHD, however, that it has established that Mr. Orlich and Mr. Lyons were negligent *per se* under Indiana law.

To begin, the Court will address the evidentiary issues.

### A.   Expert Testimony

#### 1.   Expert Roland Kohr

The Ohrns object to JDPHD's use of Dr. Roland M. Kohr, M.D. ("Dr. Kohr"), to establish Miss Ohrn's blood alcohol content.  Dr. Kohr completed the autopsy of Miss Ohrn, and as a part of the autopsy, a blood serum alcohol test was run, though not by Dr. Kohr.  Dr. Kohr was paid $400.00 per hour to testify by JDPHD, but he was not disclosed as an expert.  The Ohrns object to this use of "expert" testimony and JDPHD has not responded to the objection.  To the extent JDPHD has offered an undisclosed expert opinion, the opinion is excluded unless the failure to disclose was substantially justified or harmless.  Fed. R. Civil P. 37(c)(1); *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004).  Here, there has been no prejudice

7

and the Court finds the nondisclosure was harmless.  The Ohrns conducted a cross examination of Dr. Kohr at his deposition and questioned his methods and the results of the blood serum alcohol test, as well as Dr. Kohr's opinions on the effect of smoke and carbon monoxide in Miss Ohrn's death.  Therefore, the Ohrns' objection is **OVERRULED**.

## 2.    Expert Timothy Dickson

JDPHD contends that Timothy Dickson ("Mr. Dickson"), the Ohrns' expert on building egress codes and fire resistance, is unqualified and his opinions should be disregarded under the *Daubert* analysis.  "Under the *Daubert* gatekeeping requirement, the district court has a duty to ensure that expert testimony offered under Federal Rule of Evidence 702 is both relevant and reliable." *Jenkins v. Bartlett*, 487 F.3d 482, 488–89 (7th Cir. 2007).  "Whether proposed expert testimony is sufficiently reliable under Rule 702 is dependent upon the facts and circumstances of the particular case." *Id.*  The Court is given latitude to determine "not only how to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010).  "The court should [ ] consider the proposed expert's full range of experience and training in the subject area, as well as the methodology used to arrive at a particular conclusion." *Id.*  Additionally, the district court must determine if the proposed testimony would assist the trier of fact in determining a fact in issue or understanding the evidence. *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002) (quoting *Porter v. Whitehall Labs. Inc.*, 9 F.3d 607, 616 (7th Cir. 1993)).  However, "[d]eterminations on admissibility should not supplant the adversarial process; 'shaky' expert testimony may be admissible, assailable by its opponents through cross-examination." *Id.*

JDPHD first argues that Mr. Dickson, a structural engineer with no experience or training in fire code interpretation or enforcement, is unqualified to render opinions about Terra Trace's

compliance with building codes.  Specifically, JDPHD argues Mr. Dickson admittedly has never been responsible for determining code compliance for fire resistance or building egress on a new construction project, he does not have any training courses on building egress or fire resistance, and he has never offered opinions on a building's compliance with egress or fire resistance codes.  The Ohrns take a more general approach in response, arguing that due to Mr. Dickson's status as a licensed professional engineer in eleven states and a structural engineer in two states, as well as his experience, he is qualified as an expert in this case.  The Ohrns do not specifically respond to JDPHD's arguments to the contrary.

Mr. Dickson described a structural engineer's role as traditionally working with architects on the design of a building, specifically designing the structural framework and materials.  He stated that generally, whether a structural engineer determines or designs paths of egress depends on the size of the project.  Further, a structural engineer's role may include fireproofing or making a structure fire resistant on restoration projects, but it is generally an architect's role to make those determinations on original construction.  Mr. Dickson also testified that he personally has not been responsible for egress code compliance on a new construction, but had participated in a remedial project that involved egress issues.  As for fire resistance and fire rating issues, Mr. Dickson stated he has coordinated with architects in new construction projects, but has not had primary responsibility.  He has, however, been involved in remedial projects dealing with fire rating and fire resistance.  As for training or education, Mr. Dickson learned about fire codes on-the-job and also has attended seminars on fire protection systems.  He has not had specific education or training dealing with fire codes.  He has also never before testified about a building's compliance with egress code requirements or fire resistance.

To determine if Mr. Dickson is qualified, the Court must compare "the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Gayton*, 593 F.3d at 616 (quoting *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990)).  When the Court compares Mr. Dickson's expertise and the subject matter of his opinion, the Court finds that he has sufficient knowledge, experience, and education to render opinions about fire resistance and building egress.  While Mr. Dickson may not devote his career to these topics, he certainly has specialized knowledge of the issues as evidenced by his deposition testimony that he has collaborated with architects on these issues.

JDPHD next argues that Mr. Dickson has not explained how he determined the applicable code used in his analysis and that his method of interpreting the code is unreliable.  Specifically, JDPHD argues that Mr. Dickson did not adequately explain why he used the 1967 Indiana Administrative Rules and Regulations ("IARR") in his report as the applicable code during Terra Trace's construction in 1972.  Instead, Mr. Dickson accepted the Ohrns' counsel's representation that the 1967 IARR applied, then spoke with an unidentified Indiana Department of Homeland Security employee who told Mr. Dickson that the 1969 version of the IARR would have applied in 1972.  Mr. Dickson then compared the 1967 and 1969 versions and determined there were no changes in the applicable sections, so the 1967 IARR substantively applied.  JDPHD further suggests that the IARR did not apply and Mr. Dickson should have relied upon the Uniform Building Code ("UBC").  The Ohrns argue there is an issue of fact as to whether the IARR or UBC applied to the construction of Building D, and Mr. Dickson's reliance on the IARR is well-supported.  The Court finds that Mr. Dickson sought confirmation of his use of the IARR from the Indiana Department of Homeland Security, and his reliance on the IARR is not inherently

unreliable.  Any question about the applicability of either the IARR or UBC goes toward the weight of the evidence and not its admissibility.

Regardless of which code applies, JDPHD also argues that Mr. Dickson used a flawed methodology.  First, Mr. Dickson opined that Building D should have had enclosed stairwells, because it was a three-story structure.  However, as noted in his testimony, Mr. Dickson did not use the relevant 1967 IARR code to determine whether Building D was a three- or two-story building, given that there is a basement level.  The 1967 IARR did not require that two-story buildings have enclosed stairwells.  Second, Mr. Dickson opined that the 1967 IARR required self-closers on individual apartment doors leading to the common hallway.  JDPHD argues that Mr. Dickson has not explained why the doors to individual apartments should be considered as doors opening into an exit enclosure or providing access to exterior stairways.  Mr. Dickson did explain that in his view, "the hallways are horizontal passageways to the stairways that also had to be maintained at a one-hour fire rating, which then would require the self-closing doors because it's all based on compartmentalization trying to keep things contained in an area."  Dkt. 78-1 at 22, 77:12–18.  Yet he could not point to a specific code section that supported his explanation.

The Ohrns argue that there is an issue of fact on whether enclosed stairwells and self-closers were required.  JDPHD's argument that Mr. Dickson's methodology to reach his conclusions was unreliable essentially asks the Court to rule on the correctness of Mr. Dickson's opinion, which the Court cannot do.  *See Chapman*, 297 F.3d at 687.  The Court finds that any challenge to the sufficiency of these particular opinions goes to the weight of the opinions and not the admissibility.

Finally, JDPHD argues that Mr. Dickson should not have considered the code in effect at the time of construction in 1972, but the code in effect when the fire occurred in 2011.  Yet Mr. Dickson never considered whether Building D was in compliance with current fire code or whether Building D had passed fire code inspections in years leading up to the fire.  The Ohrns have not specifically responded to JDPHD's argument.  In the Court's view, Mr. Dickson's opinion that Building D was not up to code is only helpful to the trier of fact if it is relevant to establishing negligence resulting in Miss Ohrn's death.  JDPHD has established that Terra Trace, and specifically Building D, had passed code inspections and was in compliance with the current fire code as of 2011.  The Ohrns have not established why Mr. Dickson's opinion that Building D was in noncompliance in 1972 is relevant to this question; rather, Mr. Dickson's opinion would confuse the issues before the trier of fact.  Because an expert's opinion must be helpful in assisting the trier of fact in determining a fact at issue, the Court finds that the expert testimony fails under this requirement of *Daubert*.  Accordingly, JDPHD's objection to Mr. Dickson's opinion testimony is **SUSTAINED**.

### 3.    Expert Michael Parker

The Ohrns contend that JDPHD's electrical expert Michael Parker ("Mr. Parker") does not qualify as an expert under the *Daubert* standard.  Mr. Parker's employer was hired and he began investigating the fire at Terra Trace on October 4, 2011.  He has provided opinion testimony that the breaker box supplying the fire alarm system in Building D did not have a "Tripped" position, which could explain why the breakers were in the "Off" position.

First, the Ohrns argue that Mr. Parker is not qualified because he is an Engineering Intern, and not a licensed Professional Engineer.  Mr. Parker has a bachelor degree in electrical engineering, and has previous experience working with an electrician.  To obtain a professional

engineering license, Mr. Parker was required to take and pass the two-part Professional Engineering examination. Mr. Parker passed the first part of the test, but failed the second part on three occasions; thus, he is only an Engineering Intern. The Ohrns further argue that Mr. Parker is also not experienced in investigating fire alarms or fire alarm systems. However, Mr. Parker is a certified fire investigator, beginning in 2004, with certifications from the National Association of Fire Investigators and through the State of Indiana. Mr. Parker is experienced in investigating the cause of fires, as well as experienced in evaluating electrical systems. The Court finds that when comparing the area in which Mr. Parker has superior knowledge, skill, experience, or education with the subject matter of his testimony, he is qualified to testify about electrical systems as an expert.

Second, the Ohrns argue that Mr. Parker's methodology is unreliable. Mr. Parker examined the Building D breakers and determined the brands, makes, and models. He opined that breakers of that vintage supplying the fire alarm system did not have the center "Tripped" function, so when a breaker is exposed to an "over-current condition" or a fault, the breaker would trip to the "Off" position. Dkt. 80-4 at 13. Mr. Parker tested a similar breaker, but could not find an exact match for the breaker that was found to supply electricity to the fire alarms in Building D. After testing, Mr. Parker concluded the breaker supplying electricity to the fire alarm system was on at the time of the fire, and was tripped to the "Off" position as a result of the fire. The Ohrns argue that Mr. Parker's deposition testimony establishes that Mr. Parker did not know what type of breaker was in the electrical panel or whether it had a "Tripped" position. Mr. Parker did not test the actual breaker found in Building D, but testified that the exact same breaker was no longer manufactured or available for testing. Instead, he tested two different exemplar breakers that look identical to the Building D breaker. The Court acknowledges that

Mr. Parker did not undertake what might be considered the best method of testing. However, the Court's gatekeeper function is not intended to filter out "shaky" testimony; "[d]eterminations on admissibility should not supplant the adversarial process; 'shaky' expert testimony may be admissible, assailable by its opponents through cross-examination." *Chapman*, 297 F.3d at 687. The Court believes that Mr. Parker's method was not inherently unreliable, and the Ohrns' concerns go to the weight of the evidence and not the admissibility. Moreover, the Court finds that Mr. Parker's testimony will aid the jury's understanding about the different types of breakers, distinguishing between "Tripped" and "Off", and whether a breaker could trip into an "Off" position without being manually turned off. These are important questions of fact in this case, as discussed below. Therefore, the Ohrns' objection to Mr. Parker's expert opinion is **OVERRULED**.

### 4.      Rebuttal Expert Thomas Brown

JDPHD has moved to strike the affidavit of the Ohrns' rebuttal expert Thomas C. Brown ("Mr. Brown") (Dkt. 84).[1]  JDPHD contends that Mr. Brown's opinions are new opinions that should have been disclosed with the initial disclosures. Specifically, JDPHD argues that Mr. Brown's opinion that the fire alarm system was inadequate and that the manual pull station pulled by Ms. Patterson was defective, exceed the scope of JDPHD's expert testimony. That is because JDPHD's experts posited that the power to the fire alarms was turned on, and not that there was any sort of malfunction during the fire, the Ohrns cannot produce rebuttal testimony that there was a defect.

Rebuttal expert testimony should "contradict or rebut evidence on the same subject matter" identified by another party. Fed. R. Civ. P. 26(2)(D)(ii). "Testimony offered only as

---

[1] The Ohrns filed a Motion to Strike Defendant's Motion to Strike Affidavit of Thomas C. Brown (Dkt. 86). In the interest of resolving the issues before the Court, the Court will rule on JDPHD's motion. Thus, the Ohrns' Motion to Strike (Dkt. 86) is **DENIED**.

additional support to an argument made in a case in chief, if not offered 'to contradict, impeach, or defuse the impact of the evidence offered by an adverse party,' is improper on rebuttal." *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008).  It is not enough to cover the same subject matter of another party's experts; the report must be limited to contradicting or rebutting said experts, and cannot respond with new analysis and arguments.  *See, e.g.*, *Bowman v. Int'l Bus. Mach. Corp.*, No. 1:11-cv-RLY-TAB, 2013 WL 1857192, at *7 (S.D. Ind. May 2, 2013) ("A rebuttal report is not the time to change methodologies to account for noted deficiencies; instead, it is to respond to criticisms of such methodologies."); *Stuhlmacher v. Home Depot USA, Inc.*, No. 2:10 cv 467, 2012 WL 5866297, at *3 (N.D. Ind. Nov. 19, 2012) (finding that expert's rebuttal report that put forth new potential cause was not proper rebuttal).

Mr. Parker opined that the manual pull stations were operational and the power was turned on to the fire alarm system before the fire.  In response, Mr. Brown opined that a toggle switch within the pull station pulled by Ms. Patterson was broken and therefore, it was not fully operational before the fire.  JDPHD concedes that "[t]o the extent [Mr. Brown's] criticisms [of Mr. Parker] are admissible, they would fit likely within the framework of permissible rebuttal testimony."  Dkt. 84 at 5 n.5.  But JDPHD argues that Mr. Brown only *criticizes* Mr. Parker, and does not offer any true *opinions* that contradict Mr. Parker's opinion that the power was on at the time of the fire.   To the contrary, Mr. Parker necessarily found that the pull stations were operational as he determined they had never been activated.  Therefore, the Court finds that Mr. Brown's opinions do not offer brand new analysis, but were in response to Mr. Parker's testimony that the power to the fire alarm system was on and the pull stations were never activated.  JDPHD's Motion to Strike (Dkt. 84) is **DENIED**.

**B.**     **Application of** *Caveat Lessee*

"Indiana common law does not impose a duty on a landlord to protect tenants from injuries to defective conditions on the property once possession and control of the property has been surrendered." *Erwin v. Roe*, 928 N.E.2d 609, 615–15 (Ind. Ct. App. 2010). There are exceptions to the rule. First, "where a landlord may be liable to a tenant because of negligence that arises from the violation of a duty imposed by statute or ordinance." *Id.* at 616. Second, "where a landlord may be held liable for personal injuries caused by latent defects known to the landlord but unknown to the tenant and which the landlord fails to disclose." *Id.* Third, "a tenant may recover for injuries due to a defective condition of the rented property if the tenant shows the landlord either agreed to make repairs or was negligent in making repairs." *Hodge v. Nor-Cen, Inc.*, 527 N.E.2d 1157, 1160 (Ind. Ct. App. 1988). Fourth, "a landlord has a duty to maintain, in safe condition, parts of the building used in common by the tenants, and over which the landlord retains control." *Id.* Finally, a landlord may be liable when it "assumes to act on behalf of a tenant." *Vandenbosch v. Daily*, 785 N.E.2d 666, 669 (Ind. Ct. App. 2003).

JDPHD contends that the Ohrns are unable to put forth specific evidence showing the applicability of one of the exceptions. The Ohrns argue the applicability of three exceptions: latent defects, common area maintenance, and violation of statutory duty. The Court finds that they have established the existence of disputed issues of fact precluding determination of whether JDPHD negligently maintained the common areas of Building D.

The Ohrns have produced the deposition testimony of multiple witnesses, each of whom testified that they never heard a fire alarm sound in Building D. Ms. Patterson, a Building D resident, testified that she pulled a manual fire pull station and nothing happened; no alarm sounded. The parties have dueling expert reports on this issue. JDPHD contends that expert

16

testimony and investigations support that the pull stations were never activated and the fire alarm system was powered on before the fire started, despite Ms. Patterson's testimony to the contrary. Further, Mr. Parker, after reviewing rebuttal expert Mr. Brown's report, recognized at his deposition that there was a missing part in the pull station Ms. Patterson had pulled and concluded that the damage to the pull station occurred due to the missing part melting during the fire; thus preventing the pull from triggering the alarm. Dkt. 83-2 at 15, 53:22–25. The Ohrns contend the damage to the pull station was pre-existing and signifies JDPHD's failure to maintain the system. They further argue that the fire alarm system power was turned off.

Additionally, Mr. Clapp testified that when he examined the breaker box after the fire, the power to the fire alarm system was turned off. The parties dispute the significance of Mr. Clapp's discovery. According to JDPHD and its expert Mr. Parker, "the fact that the breaker was found in the 'Off' position only matters if the breaker has a 'Tripped' position." Dkt. 78 at 22. JDPHD goes on to explain that the specific breaker in Building D only had two positions: "On" and "Off." Therefore, JDPHD asserts, when a ground fault occurred in the power supply, the breaker would be tripped to the "Off" position. To presume otherwise, JDPHD argues is unreasonable and erroneous. However, Mr. Parker did not test the breaker at issue, and was unable to find exemplar breakers of the same model numbers, which the Ohrns argue creates a triable issue. Also, Mr. Smith, a Terra Trace employee, testified that Mr. Clapp opened the breaker and began flipping switches before taking photographs.

The Court finds that these disputed facts are material to the questions of whether an exception to *caveat lessee* exists. First, if the manual pull stations for the fire alarm system were defective or the fire alarm power system were turned off, that indicates JDPHD did not adequately maintain the common areas under its control in a safe condition. JDPHD argues a

17

factual showing that the system was turned off is not sufficient to establish negligence on behalf of JDPHD.  Specifically, it did not have exclusive control over the breaker box or fire alarm system, because Koorsen had control when conducting yearly inspections.  However, there is also testimony that Koorsen was either accompanied by a Terra Trace employee, or at minimum, needed keys to access the breaker boxes that were provided by Terra Trace, indicating JDPHD's exclusive control. Resolution of these factual disputes identified above would require determinations of credibility, which is reserved for the trier of fact.  The Court cannot determine, as a matter of law, that the common law maintenance exception does or does not apply.

JDPHD further argues even if it may have breached a duty, the Ohrns cannot satisfy the proximate causation element.  "To determine whether an act is a proximate cause of another's injury under the traditional standard of causation, [courts] consider whether the injury was a natural and probable consequence of the negligent act, which, in the light of the attending circumstances, could have been reasonably foreseen or anticipated."  *Carey v. Ind. Physical Therapy, Inc.*, 926 N.E.2d 1126, 1128–29 (Ind. Ct. App. 2010).  In other words, proximate cause is the but-for cause of an injury.  *Id.* at 1129.  Moreover, a cause need not be the sole cause, but one of the proximate causes.  "While proximate cause is generally a question of fact, it becomes a question of law where only a single conclusion can be drawn from the designated facts."  *Id.* Here, there is not a single conclusion to be drawn from the facts in the record satisfying summary judgment.  There is sufficient evidence in the record to support a reasonable jury finding that but-for the fire alarm system failure, Miss Ohrn was awakened too late to escape the fire.  While this may not be the only proximate cause, it is one that is reasonably supported in the record. Thus, it is not for the Court to make this determination.  Therefore, the Ohrns' negligence claim survives summary judgment and JDPHD's motion is **DENIED**.

The Ohrns also put forth theories of negligence based on improper compliance with building egress codes and fire resistance, relying upon the expert opinion of Mr. Dickson.  The Court has previously found that Mr. Dickson's opinion is irrelevant as it pertains to the 1967 IARR.  The Ohrns' legal theories for negligence based on Mr. Dickson's opinions that JDPHD had violated the code and standards for egress and fire resistance are otherwise unsupported.  Therefore, the Ohrns have not established a genuine issue of material fact under these legal theories of recovery.  Summary judgment is **GRANTED** on this issue.

Additionally, the Ohrns assert that JDPHD negligently failed to disclose latent defects on its property, as supported by Mr. Dickson's expert opinion that a dryer vent improperly vented into an interior space, gaps and openings were present in the fire separation walls in the attic, and that open galvanized steel vertical vent pipes were improperly installed in the attic.  They argue these latent defects caused Miss Ohrn's death.  The Ohrns have not established that JDPHD knew of these defects and failed to warn tenants.  *See Dickison v. Hargitt*, 611 N.E.2d 691, 695 (Ind. Ct. App. 1993) ("[I]t bears repeating that the hidden defect exception to the rule of *caveat lessee* requires *actual* knowledge of the hidden defect on the landlord's part before a duty to warn of the defect arises." (emphasis in original)).  Moreover, there is no evidence that these latent defects contributed to the cause or exacerbation of the fire that killed Miss Ohrn.  The Ohrns have not established a genuine issue of material fact under this legal theory of recovery.  Therefore, summary judgment is **GRANTED** on this issue.

C.       **Negligence *Per Se* Affirmative Defense**

"The violation of a duty fixed or prescribed by statute is often described as negligence *per se*." *Kho v. Pennington*, 875 N.E.2d 208, 212 (Ind. 2007). "[T]he unexcused violation of a statutory duty constitutes negligence *per se* if the statute or ordinance is intended to protect the class of persons in which the plaintiff is included and to protect against the risk of the type of harm which has occurred as a result of its violation." *Id.* at 212–13 (internal quotation omitted). Indiana courts recognize the concept of negligence *per se* under this standard.

JDPHD relies on Indiana Code section 22-11-18-3.5, which governs the use of smoke detectors in rental properties and defines the separate duties of landlord and tenant. Specifically, the statute states, "A person may not tamper with or remove a smoke detector except when necessary for maintenance purposes." *See also* Ind. Code 32-31-7-5(6) ("A tenant shall do the following:  Ensure that each smoke detector installed in the tenant's rental unit remains functional and is not disabled . . . .").

It is undisputed that Mr. Orlich and Mr. Lyons disabled the smoke detector in apartment D9.  The Ohrns respond that it is improper to find negligence *per se* because there is an issue of fact whether JDPHD delegated maintenance of the smoke detector to Mr. Orlich and Mr. Lyons. The Court agrees with JDPHD that this question does not preclude the initial finding of negligence *per se*, but is directed at assessment of fault.  JDPHD's argument succeeds, not because the smoke detector needed a new battery and Mr. Orlich and Mr. Lyons did not change the battery, but because Mr. Orlich and Mr. Lyons disabled the smoke detector entirely in contravention of two state statutes.  This is not like the case of *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1132 (Ind. 1995), in which it was unclear whether the landlord had delegated its statutory duty to maintain a fire sprinkler system to the tenant.  Here, the statutory duty is already upon the tenants to refrain from disabling a rented unit's smoke detector.

20

Instead, the focus is on whether the statute or ordinance at issue is intended to protect the class of persons in which the plaintiff is included and to protect against the risk of the type of harm which has occurred as a result of its violation.  The Ohrns have produced no argument or fact that disputes that Miss Ohrn was within the class of persons the statute protected, or that disputes the statute was designed to protect against the harm that occurred in this case.  The Court's finding that the act of disabling the smoke detector constituted negligence *per se* will be just one factor considered by the trier of fact when it assesses causation, fault, and liability. Therefore, JDPHD's motion for summary judgment on this affirmative defense is **GRANTED**.

## IV.  CONCLUSION

Accordingly, JDPHD's Motion for Summary Judgment (Dkt. 50) is **GRANTED in part** and **DENIED in part**.  Specifically, it is **GRANTED** for purposes of JDPHD's negligence *per se* affirmative defense, and on the latent defects and statutory violation exceptions to *caveat lessee*.  It is **DENIED** regarding the maintenance of the common areas exception to *caveat lessee*.  Additionally, the Court **OVERRULES** the Ohrns' objections to expert witnesses Dr. Kohr and Mr. Parker, and **SUSTAINS** JDPHD's objection to expert witness Mr. Dickson. Finally, JDPHD's Motion to Strike Affidavit of Thomas C. Brown (Dkt. 84) is **DENIED** and the Ohrns' Motion to Strike Defendant's Motion to Strike (Dkt. 86) is **DENIED**.

**SO ORDERED.**

Date: 11/25/2013  _____

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Michael J. Devine
DEUTSCH LEVY & ENGEL CHARTERED
devine@dlec.com

Nicholas Ward Levi
KIGHTLINGER & GRAY
nlevi@k-glaw.com

Thomas J. Jarzyniecki, Jr.
KIGHTLINGER & GRAY
tjarzyniecki@k-glaw.com

Thomas Edward Hastings
THE HASTINGS LAW FIRM
thastings@lawindianapolis.com